UNITED  STATES  DISTRICT  COURT

FOR  THE  CENTRAL  DISTRICT  OF  CALIFORNIA

| | | |
|---|---|---|
| C.C. BY AND THROUGH MILKA CIRIACKS , | ) ) ) | CASE NO. SACV 11-352 AG (MLGx) |
| | ) ) | **ORDER GRANTING MOTION FOR** |
| **Plaintiff,** | ) ) | **PRELIMINARY INJUNCTION** |
| **v.** | ) ) | |
| **CYPRESS SCHOOL DISTRICT, ET AL.,** | ) ) ) | |
| **Defendant.** | ) ) ) | |
| _____ | ) | |

Plaintiff C.C., a minor ("Plaintiff"), filed a complaint based on disability discrimination against Defendant Cypress School District, et al. ("Defendants").  Plaintiff has now filed a preliminary injunction motion ("Motion"), requesting that Defendants be required to accommodate Plaintiff's use of his service dog in school.  After reviewing all papers and arguments submitted, the Court GRANTS the preliminary injunction.

**FINDINGS OF FACT**

The Court makes the following findings of fact from admissible evidence at this stage of the case, including any findings of fact in the conclusions of law.

Plaintiff is a six-year-old student at Frank Vessels Elementary School in the Cypress School District (the "District").  (Declaration of Milka Ciriacks ("Ciriacks Decl.") ¶ 26.)  Plaintiff has been diagnosed with autism, a neurobiological condition affecting how he interacts with the world.  (*Id.* ¶ 2.)  Plaintiff's autism is severe: he is nonverbal, has a low cognitive level, and has great difficulty interacting with others.  (*Id.*)  Plaintiff also becomes anxious very frequently.  (*Id.* ¶ 4.)  When this happens, he will often shriek, pace, plug his ears, laugh inappropriately, and flap his arms.  (*Id.*)  Recently, Plaintiff has also started pinching and scratching people, and he has begun to wet himself at school.  (*Id.* ¶¶ 38-39.)

In May 2010, Plaintiff was paired with Eddy, a service dog that was trained by the Autism Service Dogs of America (the "ASDA").  (Ciriacks Decl. ¶ 13.)  Each dog at the ASDA is trained for nearly two years, starting when the dog is approximately eight weeks old.  (*Id.* ¶ 12.)  Eddy's trainer knew in advance that Eddy would eventually be paired with Plaintiff, and therefore Eddy was specifically trained for Plaintiff by performing such training in a classroom around children with autism.  (*Id.* ¶ 31.)

Eddy's training allows him to work for Plaintiff by preventing or interrupting impulsive or destructive behavior.  (Declaration of Kati Rule-Witko ("Rule Decl.") ¶ 37.)  Such behavior includes running away or wandering off, known as "elopement."  (Declaration of Dr. Stephen M. Shore ("Shore Decl.") ¶ 17.)  Eddy is also trained to sense Plaintiff's mood and intervene if Plaintiff begins feeling anxious.  (Rule Decl. ¶ 37.)

After Plaintiff was paired with Eddy, Plaintiff's mother requested that Defendants allow Plaintiff to use Eddy at school.  (Ciriacks Decl. ¶ 31-32.)  Defendants refused to do so.  (*Id.*)  Fearing that the benefits from Plaintiff's connection with Eddy would be lost if Eddy could not accompany Plaintiff to school, Plaintiff's parents kept Plaintiff home from school during the last two weeks of the 2009-2010 school year.  (*Id.*)  And although concerns remained, Plaintiff was

sent to school during the 2010-2011 school year without Eddy.  (*Id.* ¶ 34.)

During the 2010-2011 school year, Plaintiff was in a classroom that accommodates ten students, all of whom have autism.  (Declaration of Jamie Bodie ("Bodie Decl.") ¶ 3.)  Each of the ten students has individualized annual educational goals as required by the Individuals with Disabilities Education Act.  (*Id.*)  There are five adult educators for the ten students in Plaintiff's classroom, including Ms. Jamie Bodie and four Applied Behavioral Analysis ("ABA")-trained aides, establishing a 2:1 student-to-teacher ratio for the classroom.  A primary focus of Plaintiff's educational program is to increase his ability to cope independently in his environment.  (Declaration of Glenda McHale ("McHale Decl.") ¶ 6.)

Based on these facts and others, Plaintiff's complaint alleges six claims, numbered as follows: (1) violations of Title II of the Americans with Disabilities Act (42 U.S.C. § 12131, *et seq.*); (2) violations of Section 504 of the Rehabilitation Act of 1973 (79 U.S.C. § 794, *et seq.*); (3) violations of the Unruh Civil Rights Act (Cal. Civ. Code § 51, *et seq.*); (4) violations of California Government Code § 11135; (5) violations of the California Disabled Persons Act (Cal. Civ. Code § 54, *et seq.*); and (6) negligence.  As noted, Plaintiff moves for preliminary injunction ordering Defendants to accommodate Plaintiff's request to use Eddy during school.

**PRELIMINARY MATTERS**

To support his Motion, Plaintiff requests judicial notice of three items: (1) Plaintiff's request for a due process hearing, filed with the California Office of Administrative Hearings, Special Education Division ("OAH") on November 12, 2010; (2) an OAH Order Denying a notice of insufficiency and granting a motion to dismiss, OAH Case No. 2010110572, December 6, 2010; and (3) a Department of Justice News Article: Hillsboro School District Agrees to Access for Service Dog, issued March 7, 2011.  Defendants did not oppose this request.

Under Federal Rule of Evidence 201, "[a] judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose

accuracy cannot reasonably be questioned." Fed. R. Evid. 201.  Courts may take judicial notice of "undisputed matters of public record," but generally may not take judicial notice of "disputed facts stated in public records." *Lee v. City of Los Angeles*, 250 F.3d 668, 690 (9th Cir. 2001) (emphasis in original).

The Court finds that the requests at issue meet the requirements of Rule 201 as to the first two items, but not the third.  The request for judicial notice is GRANTED IN PART and DENIED in PART, and it is granted in part only as to the existence of the documents.

**LEGAL STANDARD**

A preliminary injunction is a provisional remedy issued before final disposition of the litigation.  Its function is to preserve the status quo and prevent irreparable loss of rights before judgment.  *Sierra On-Line, Inc. v. Phoenix Software, Inc.*, 739 F.2d 1415, 1422 (9th Cir. 1984). It is a "drastic and extraordinary remedy that is not to be routinely granted." *Intel Corp. v. ULSI Sys. Tech., Inc.*, 995 F.2d 1566, 1568 (Fed. Cir. 1993).  The Supreme Court recently set forth the standard for preliminary injunctions in *Winter v. NRDC, Inc.*, 129 S. Ct. 365, 374 (2008).  Even more recently, the Ninth Circuit set forth standards for preliminary injunctions in *Alliance for Wild Rockies v. Cottrell*, 622 F.3d 1045 (9th Cir. 2010).

These legal standards for preliminary injunctions are applied in the Conclusions of Law section.

**CONCLUSIONS OF LAW**

The Court makes the following conclusions of law, including any conclusions of law in the findings of fact.

Here, a preliminary injunction is warranted.  *See Winter*, 129 S.Ct. at 374 ("A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of

1  equities tips in his favor, and that an injunction is in the public interest.").  The Court now turns
2  to why this is so.

3

4  **1.      LIKELIHOOD OF SUCCESS ON THE MERITS**

5

6        Plaintiffs seeking a preliminary injunction must show a likelihood of success on the
7  merits for at least one of their claims.  Here, the Court first turns to the merits of Plaintiff's claim
8  for violations of Title II of the ADA, 42 U.S.C. § 12131, *et seq*.

9        To establish a violation of Title II of the ADA, a plaintiff must show: (1) the plaintiff is a
10  qualified individual with a disability; (2) the plaintiff was either excluded from participation in
11  or denied the benefits of a public entity's services, programs or activities, or was otherwise
12  discriminated against by the public entity; and (3) such exclusion, denial of benefits, or
13  discrimination was by reason of the disability.

14        The parties largely agree that Plaintiff meets the first and third elements of this legal
15  standard.  Specifically, Defendants appear to agree that due to Plaintiff's autism, he is a qualified
16  individual with a disability.  Defendants also do not appear to dispute that if Defendants indeed
17  have discriminated against Plaintiff here, it was by reason of his disability.  The main source of
18  contention comes from the second element, whether Defendants discriminated against Plaintiff.

19        Failure to make reasonable accommodations may qualify as discrimination under the
20  ADA.  Federal regulations implementing Title II of the ADA "require public entities to make
21  reasonable modifications in policies, practices, or procedures when the modifications are
22  necessary to avoid discrimination on the basis of disability, unless the public entity can
23  demonstrate that making the modifications would fundamentally alter the nature of the service,
24  program, or activity." *McGary v. City of Portland*, 386 F.3d 1259, 1266 (9th Cir. 2004) (citing
25  28 C.F.R. § 35.130(b)(7); *Townsend v. Quasim*, 328 F.3d 511, 517 (9th Cir. 2003)); *see also*
26  *Dunlap v. Ass'n of Bay Area Gov'ts*, 996 F. Supp. 962, 965 (N.D.Cal. 1998) ("[T]he ADA not
27  only protects against disparate treatment, it also creates an affirmative duty in some
28  circumstances to provide special, preferred treatment, or 'reasonable accommodation.'").  Thus,

the question here is whether Defendants failed to make reasonable accommodations for Plaintiff that would not fundamentally alter the nature of Defendants' educational program.

Here, this question concerns two major points of contention: (1) whether Eddy is a service dog; and (2) whether Defendants' educational program would be fundamentally altered if Eddy accompanied Plaintiff to school.

### 1.1    Whether Eddy is a Service Dog

Defendants first argue that they did not fail to provide a reasonable accommodation since Eddy is not a "service dog" under the ADA, and therefore Plaintiff is not entitled to use Eddy at school.  This argument fails.

Under the ADA, a service dog is "any dog individually trained to do work or perform tasks for the benefit of an individual with a disability."  28 C.F.R. § 35.104.  "The work or tasks performed by a service animal must be directly related to the individual's disability."  *Id.* "Work" includes "helping persons with psychiatric and neurological disabilities by preventing or interrupting impulsive or destructive behaviors" but does not include "the provision of emotional support, well-being, comfort, or companionship."  *Id.*

Plaintiff provides detailed evidence showing that Eddy is a service dog.  First, as noted, Plaintiff states that Eddy was trained for almost two years by the ASDA.  (Ciriacks Decl. ¶¶ 12, 13.)  Plaintiff has also shown that Eddy was specifically trained for Plaintiff and Plaintiff's specific needs.  (*Id.* ¶ 31.)  This specialized training supports Plaintiff's argument that Eddy is indeed a service dog.

Defendants argue that Eddy is primarily present to comfort Plaintiff and that this comforting presence is not enough to make him a "service dog" under the ADA.  (Opposition to Motion ("Opp'n") at 12:7-14.)  Plaintiff indeed concedes that Eddy calms Plaintiff when Plaintiff feels anxious or nervous.  (Rule Decl. ¶ 37.)  But although this function alone may not qualify Eddy as a service dog, it certainly does not foreclose the possibility, as Defendants appear to argue.  And here, Eddy's calming function is complemented by various other tasks that

1     do qualify as "work" under the ADA. Most importantly, Eddy prevents Plaintiff from the

2     potentially harmful act of elopement. (Shore Decl. ¶ 17.) Eddy also helps prevent Plaintiff from

3     shrieking and throwing tantrums. (*Id*. ¶ 37.) These tasks certainly qualify as "preventing or

4     interrupting impulsive or destructive behaviors," as listed in 28 C.F.R. § 35.104.

5         Eddy is a service dog under the ADA. The Court now turns to whether allowing Plaintiff

6     to bring this service dog to school would fundamentally alter Defendants' educational program.

7

8        **1.2**      **Whether Defendants' Program Would be Fundamentally Altered**

9

10        As noted, Defendants have the burden of showing that "making the modifications would

11     fundamentally alter the nature of the service, program, or activity." *McGary*, 386 F.3d at 1266.

12     Defendants fail to meet this burden.

13        Defendants currently only cite scant evidence showing that their educational program will

14     be affected if Eddy is present in the classroom. Defendants first cite the Declaration of Kati

15     Rule-Witko, stating that a school staff member would need to learn "five to ten of the

16     commands" that Eddy is trained to obey. (Opp'n at 15:15-16.) Defendants also argue that an

17     aide would need to hold the dog's leash when navigating campus, provide the dog with water,

18     and tether and untether Eddy to Plaintiff occasionally throughout the day. (*Id*. at 15:16-19.)

19        Defendants have not shown that these concerns, even if valid, amount to a fundamental

20     alteration of Defendants' educational program. Although Defendants show a possibility that

21     some program changes will be necessary, and that Defendants may incur some additional

22     expenses, they have not currently shown that such changes are so drastic that the

23     accommodation requested would be unreasonable. Nor have Defendants shown, as Defendants

24     briefly argue, that they would be responsible for the care or supervision of Eddy, as prohibited

25     by 28 C.F.R. § 35.136(e), due to these additional tasks.

26        Further, even though Plaintiff doesn't carry the burden of proof concerning whether the

27     program will be fundamentally altered, Plaintiff actually provides evidence alleviating many of

28     Defendants' concerns. Eddy does not need to be given water during the school day, and he is

1  trained to not relieve himself during school.  (Rule Decl. ¶ 52.)  Eddy's leash will need to be

2  held only when Eddy travels from one part of the school to another.  (*Id*. ¶ 53.)  Defendants

3  typically will only need to use two particular instructions with Eddy, "Down Stay," and "Eddy

4  Okay."  (*Id*. ¶ 50.)  And although Defendants also argue that they may be forced to hire

5  additional staff to command the dog in the classroom, Plaintiff provides evidence that no school

6  in which an ASDA dog has been placed has ever had to hire such additional staff.  (*Id*. ¶ 28.)

7       Defendants argue that allowing Plaintiff to bring Eddy to school "would impede

8  Plaintiff's educational process and independence."  (Opp'n at 13:5-7 (citing McHale Decl. ¶¶

9  10-18).)  But this argument is largely irrelevant.  Eddy's efficacy in helping Plaintiff reach his

10 educational goals is a different matter from whether Defendants are discriminatory by not

11 allowing Plaintiff to bring Eddy to school.  As the District Court in *Sullivan v. Vallejo City*

12 *Unified School District* stated, "[t]he issue of whether the service dog enhances plaintiff's

13 educational opportunities . . . is completely irrelevant under section 504."  731 F. Supp. 947, 951

14 (E.D. Cal. 1990).  In *Sullivan*, a school district was enjoined from preventing a  student with

15 cerebral palsy, learning disabilities, and rightside deafness from bringing her service dog to

16 school.  *Id*. at 961.  Like in *Sullivan*, Plaintiff's claim here is that "whether or not the service dog

17 is educationally necessary, defendants have discriminated against [plaintiff] on the basis of [his]

18 handicap by arbitrarily refusing [him] access if [he] is accompanied by her service dog."  *Id*. at

19 951.

20       *Sullivan* shows that here, to determine whether an injunction is proper, the question is not

21 whether Eddy will improve Plaintiff's educational progress, but whether Eddy will

22 fundamentally alter Defendants' educational program.  Accordingly, the relevance of Eddy's

23 presence simply regards the degree that Defendants would be forced to alter their educational

24 program for both Plaintiff and the other nine students with autism.

25       In fact, Defendants' strongest argument may concern not the impact that Eddy will have

26 on Plaintiff, but on the other children who are a part of Plaintiff's program.  But Defendants only

27 briefly address this point, arguing that Defendants "would have to teach the remaining students

28 to ignore the dog" and raising largely unsupported concerns about canine aggression.  (Opp'n at

21:22-22:14; McHale Decl. ¶ 13.)  Defendants' fleeting discussion of the impact on other children is not sufficient here for Defendants to show a fundamental change to their program.

Defendants' remaining arguments are unpersuasive.  Defendants have not shown that Plaintiff's requested accommodation would fundamentally alter the educational program.

### 1.3     Likelihood of Success Conclusion

Eddy is a service dog under the ADA, and Defendants have not sufficiently shown that their educational program will be fundamentally altered if they accommodate Plaintiff by allowing Eddy to accompany him to school.  Plaintiff has shown a likelihood of success on the merits for his ADA claim.

Because Plaintiff has shown a likelihood of success on the merits for his ADA claim, and also because of the similarity between his ADA claim and his remaining discrimination claims, the Court need not analyze the likelihood of success for these claims.  The parties also do not discuss Plaintiff's negligence claim in their papers, and the Court also need not review whether this claim supports the requested preliminary injunction.

Plaintiff has satisfied the first element of *Winter*.  The Court now turns to the remaining *Winter* factors.

### 2.     IRREPARABLE HARM

Defendants argue that no irreparable harm will result even if a preliminary injunction is not granted.  To support this argument, Defendants first argue that Plaintiff's delay in filing this preliminary injunction application shows a lack of any immediacy or irreparable harm.  (Opp'n at 9:23-10-5.)  Although Plaintiff certainly could have filed his application somewhat sooner, the minor delay cited by Defendants is certainly not a dispositive showing that no irreparable harm will occur moving forward.

As for Defendants' substantive arguments concerning irreparable harm, Defendants

1   primarily focus on their high-quality educational program for autistic children and Plaintiff's
2   apparent progress in this program.  (Opp'n at 8:18-9:22.)  Defendants appear to argue that
3   because Plaintiff is making substantial progress in this program, Plaintiff will not suffer any
4   irreparable harm even if he continues in this program without a service dog.  This argument is
5   unpersuasive.

6         Defendants largely fail to address Plaintiff's key argument concerning irreparable harm.
7   Specifically, Plaintiff argues that preventing Eddy from accompanying him to school "damag[es]
8   the bond between Plaintiff and his service dog, thereby reducing the efficacy of [Plaintiff's]
9   service dog in his daily life."  (Motion at 18:14-16.)  In other words, Plaintiff argues that if the
10  bond between him and Eddy is broken, the potential benefits of the service-dog relationship will
11  be lost.

12        Plaintiff has sufficiently shown that keeping him and Eddy apart during school hours will
13  disrupt the service dog relationship and cause irreparable harm.  Plaintiff has shown that by
14  keeping them apart for the 6.5-hour school day, every school day, Defendants are causing the
15  bond to deteriorate, and that this greatly reduces Eddy's utility to Plaintiff.  (Adams Decl. ¶ 18;
16  Rule Decl. ¶¶ 45-48.)  And Plaintiff has further shown that this broken bond and Eddy's future
17  confusion about his role as a service dog are consequences that, after time, are largely
18  irreversible.  (*See id*.)

19        Even aside from Plaintiff's evidentiary showing, the Ninth Circuit presumes irreparable
20  harm when a plaintiff shows a likelihood of success for violation of a civil rights statute.  *Silver*
21  *Sage Partners v. City of Desert Hot Springs*, 251 F.3d 814, 827 (9th Cir. 2001) ("where a
22  defendant has violated a civil rights statute, we will presume that the plaintiff has suffered
23  irreparable injury from the fact of defendant's violation"); *see also United States v. Nutri-cology,*
24  *Inc.*, 982 F.2d 394, 398 (9th Cir. 1992) (where the government has met the "probability of
25  success" requirement, it is presumed to have also met the "possibility of irreparable injury
26  requirement" because "passage of the statute is itself an implied finding by Congress that
27  violations will harm the public"); *Smallwood v. Nat'l Can Co.*, 583 F.2d 419, 420 (9th Cir. 1978)
28  (irreparable harm could be presumed for a violation of Title VII).  Accordingly, even if Plaintiff

1  has not made an evidentiary showing that he will suffer irreparable harm if he is not allowed to

2  bring Eddy to school, such harm is presumed since Plaintiff has shown a likelihood of success

3  on the merits.  Defendants have not provided sufficient evidence to rebut this presumption.

4       In sum, Plaintiff has sufficiently shown that he will suffer irreparable harm if a

5  preliminary injunction is not granted, even without the additional presumption of irreparable

6  harm due to showing a likelihood of success on the merits.  Plaintiff has met the second *Winter*

7  element.

8

9  **3.      BALANCING OF EQUITIES**

10

11      Defendants have not sufficiently shown incompensable damage due to an injunction.

12  Although Defendants will likely incur expenses due to training and the possible hiring of

13  additional staff, the costs from these consequences are measurable and compensable.  And, as

14  previously discussed, Defendants have not currently shown that any requested accommodations

15  would fundamentally alter their educational program.

16      By contrast, Defendants' requested denial of the preliminary injunction runs the serious

17  risk of breaking the necessary bond between Plaintiff and Eddy, a service dog specifically

18  trained for almost two years to assist Plaintiff.  This could cause Plaintiff serious harm in his

19  ability to enjoy any of the benefits that Eddy was meant to provide.

20      Balancing of the equities tips in favor of granting the preliminary injunction.

21

22  **4.      PUBLIC INTEREST**

23

24      Protecting the rights of individuals with disabilities clearly serves the public interest.  The

25  ADA, as well as other similar state anti-discrimination laws, extends this protection to

26  individuals who use service animals.  Plaintiff, due to his autism, is an individual protected by

27  the ADA, and the public interest is served by protecting his rights and allowing him to bring his

28  service animal to school.  Plaintiff has met the fourth element of the *Winter* standard.

**5.      PRELIMINARY INJUNCTION CONCLUSION**

Plaintiff has met all four elements for a preliminary injunction under *Winter*.  And for the same reasons that Plaintiff has met the *Winter* standard, Plaintiff has also met the related *Alliance* standard.  Plaintiff's Application is GRANTED.

**6.      BOND REQUIREMENT**

Plaintiff argues that the requested preliminary injunction should be issued without a bond requirement.  (Motion at 23.)  Defendants failed to address the bond requirement in their opposition.  (*See generally* Opp'n.)

When granting a preliminary injunction, Federal Rule of Civil Procedure 65(c) requires a court to set a security bond "in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained."  Fed. R. Civ. Proc. 65(c).  The bond requirement serves two purposes: (1) to create a fund to make whole a party wrongly enjoined and (2) to provide an efficient means of recovery for such a party.

Although Defendants failed to directly address the bond requirement in their papers, they do raise several points showing that a bond is proper here.  Most notably, Defendants raise the undisputed point that additional staff training will be required to properly accommodate Plaintiff's request.  Further, it is currently unclear whether staff reassignment or hiring additional staff will be necessary, and the accrued costs from any such actions will not be trivial with the parties requesting a trial date of more than a year from now.  (Parties' Joint Rule 26(f) Report, Doc. # 29, at 4:2.)  Finally, the ultimate impact due to Eddy's presence on the other children in Plaintiff's educational program, and the costs due to this impact, is still largely unsettled.

Due to these risks, and the inherent costs associated with these risks, the Court rules that Plaintiff must post a $50,000 bond before the preliminary injunction becomes effective.

**DISPOSITION**

     The Court GRANTS the Motion.  The Court will issue a separate order detailing the scope of the injunction, and the injunction will become effective only after Plaintiff posts a $50,000 bond.  The Plaintiff may file a noticed motion requesting a reduction in the bond amount, and all other parties, as well as the United States, may respond to such a motion.

     The Motion is granted without prejudice to Defendants bringing a future motion to modify or lift the preliminary injunction.  Defendants may bring this future motion if they can provide additional evidence showing that Plaintiff's requested accommodations could not be made without fundamentally altering their educational program or if they can provide evidence that any required handling of Eddy by Defendants violates § 35.136.  Defendants may bring such a motion no earlier than one month after Eddy has begun accompanying Plaintiff to school.

IT IS SO ORDERED.

DATED: June 13, 2011

                                          _____
                                                Andrew J. Guilford
                                 United States District Judge